UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  25-61039-CIV-DAMIAN/Strauss

DAWEI SUN,

     Plaintiff,

v.

VIRGIN CRUISES INTERMEDIATE
LIMITED, INC. d/b/a VIRGIN VOYAGES,

     Defendant.

_____/

ORDER ON DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT [ECF NO. 21]

THIS CAUSE is before the Court upon Defendant, Virgin Cruises Intermediate

Limited, Inc.'s d/b/a Virgin Voyages ("Virgin Voyages" or "Defendant"), Motion to Dismiss

Plaintiff's Amended Complaint, filed on August 1, 2025. [ECF No. 21 ("Motion")].

THE COURT has reviewed the Motion, the parties' briefing [ECF Nos. 24 and 27],

the pertinent portions of the record, and the applicable law and is otherwise fully advised. For

the following reasons, this Court finds the Motion is due to be granted.

## I.    BACKGROUND

### A. Factual Allegations.

This is a maritime negligence action arising under the Court's diversity jurisdiction

pursuant to 28 U.S.C. § 1332,[1] or in the alternative, arising under the Court's admiralty

jurisdiction. Plaintiff, Dawei Sun ("Sun" or "Plaintiff"), alleges that, on October 11, 2024,

---

[1] Plaintiff is a resident and citizen of British Columbia, Canada. ("Am. Compl.") [ECF No. 16] ¶ 1. Defendant is a foreign entity with its principal place of business in Florida. *Id.* ¶ 2. Plaintiff alleges that the amount in controversy exceeds $75,000. *See id.* ¶ 3.

while aboard one of Defendant's cruise ships, the *Valiant Lady* ("Vessel"), he was struck by two large metal ceiling tiles that fell from the ceiling as he was exiting the smoking room adjacent to the casino on Deck 6. *See* Am. Compl. ¶ 11. Sun alleges that the metal ceiling tiles struck him on the shoulder, leg, and foot. *Id.* He further alleges that a third metal tile was left dangling from the ceiling by lighting wiring and that a casino host responded to the scene and held the third ceiling tile from further collapse. *Id.* Sun further alleges in the Amended Complaint that the two ceiling tiles that struck him caused him to sustain severe injuries both from the blow and from contorting his spine in an effort to protect himself from the impact. *Id.* Sun was taken to the ship's medical center for treatment. *Id.* Sun alleges that as a result of the incident, he suffered bodily injuries, pain and suffering, mental anguish, disability, loss of normal life, loss of earnings and earning capacity, and significant medical expenses, including a two-level lumbar surgery, with continuing and permanent damages. *Id.* ¶ 18.

According to Sun, there was nothing that he could have done to prevent the ceiling tiles from collapsing, and the ceiling tiles were within Defendant's exclusive control and not positioned where passengers would encounter, engage, or manipulate them. *Id.* ¶¶ 13–14. Sun alleges that Defendant knew or should have known of the unreasonable risk of harm posed by the ceiling tiles due to its participation in the design and construction of the Vessel and its sister ships, its acceptance of the ceiling tiles and anchoring devices despite alleged design defects, and its failure to adhere to accepted industry safety practices. *Id.* ¶ 15. He further alleges that Defendant knew or should have known of the dangerous condition through regular inspection and maintenance of the ceiling tiles and their anchoring devices as well as

2

through prior similar incidents or complaints involving substantially similar ceiling tiles aboard the Vessel, its sister ships, or other cruise ships. *Id.* ¶¶ 16–17.

### B. *The Instant Action.*

On May 23, 2025, Sun filed a Complaint against Defendant and a separate entity, Virgin Cruises US, LLC. [ECF No. 1]. On July 18, 2025, Sun subsequently filed an Amended Complaint solely naming the Defendant, Virgin Cruises Intermediate Limited, Inc. [ECF No. 16]. In the Amended Complaint, the operative pleading, Sun asserts four causes of action against Defendant: Count I – Negligent Design, Construction, and/or Approval of the Ceiling Tiles and Anchoring Devices; Count II – Negligent Failure to Inspect and Maintain; Count III – Negligent Failure to Warn; and Count IV – Inference of Negligence by *Res Ipsa Loquitor*. *Id.* ¶¶ 19–36.

On August 1, 2025, Defendant filed the Motion now before the Court seeking dismissal of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See generally* Mot. The Motion is fully briefed and ripe for adjudication.

## II.   LEGAL STANDARD

### A. *Motion To Dismiss.*

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim" showing the pleader is entitled to relief. A complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a complaint that does not satisfy the applicable pleading requirements for "failure to state a claim upon which relief can be

granted." In considering a Rule 12(b)(6) motion, the court accepts all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However, pleadings that "are no more than conclusions[ ] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Dismissal pursuant to a Rule 12(b)(6) motion is warranted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint." *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 208 F.3d 1308, 1310 (11th Cir. 2000) (internal quotation marks omitted) (quoting *Hishon*, 467 U.S. at 73). In cases involving alleged torts "committed aboard a ship sailing in navigable waters," the applicable substantive law is general maritime law, the rules of which are developed by the federal courts. *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320 (11th Cir. 1989) (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628 (1959)); *see also Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358 (11th Cir. 1990) ("Because this is a maritime tort, federal admiralty law should control. Even when the parties allege diversity of citizenship as the basis of the federal court's jurisdiction (as they did in this case), if the injury occurred on navigable waters, federal maritime law governs the substantive issues in the case."). In the absence of well-developed maritime law, courts may supplement the maritime law with general common law and state law principles. *See Smolnikar v. Royal Caribbean Cruises, Ltd.*, 787 F. Supp. 2d 1308, 1315 (S.D. Fla. 2011).

4

### B. General Maritime Negligence.

"Maritime law governs actions arising from alleged torts committed aboard a ship sailing in navigable waters." *Guevara v. NCL (Bah.) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019) (citing *Keefe v. Bah. Cruise Line, Inc.*, 867 F.2d 1318, 1320–21 (11th Cir. 1989)). "In analyzing a maritime tort case, [courts] rely on general principles of negligence law." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (quoting *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980)). To plead negligence in a maritime-tort case, "a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Chaparro*, 693 F.3d at 1336. "With respect to the duty element in a maritime context, 'a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew.'" *Guevara*, 920 F.3d at 720 (quoting *Kermarec*, 358 U.S. at 630). This reasonable-care standard "requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition, at least where . . . the menace is one commonly encountered on land and not clearly linked to nautical adventure." *Keefe*, 867 F.2d at 1322. "Actual notice exists when the defendant knows about the dangerous condition, and constructive notice exists where 'the shipowner ought to have known of the peril to its passengers.'" *Newbauer v. Carnival Corp.*, 26 F.4th 931, 935 (11th Cir. 2022) (quoting *Keefe*, 867 F.2d at 1322). Constructive notice may be established, *inter alia*, by proof that a condition was present for a sufficient period of time, that crewmembers were present at the time of the injury, or through

5

evidence of substantially similar incidents. *See Keefe*, 867 F.2d at 1322; *Aponte v. Royal Caribbean Cruise Lines Ltd.*, 739 F. App'x 531, 536 (11th Cir. 2018).

## III.    DISCUSSION

In the Motion, Defendant argues that the Amended Complaint should be dismissed on grounds: (1) Plaintiff fails to allege facts with specificity necessary to sustain a negligent design claim; (2) Plaintiff fails to adequately allege that Defendant had actual or constructive notice of the alleged risk-creating condition; and (3) Plaintiff's claim for inference of negligence pursuant to the doctrine of *res ipsa loquitor* is not a stand-alone cause of action. *See* Mot. at 2.

### A.  Duty Of Care Owed To Plaintiff.

As a threshold matter, the parties dispute the duty that Defendant owed to Sun. In his Response, Sun argues that Defendant owed him a heightened duty of care because the alleged dangerous condition is a unique maritime peril. Resp. at 4–14. Specifically, Sun asserts that "[v]essel movement and vibration shaking heavy metal ceiling tiles until they come loose and collapse is a uniquely maritime phenomenon linked to travel on a ship." *Id.* at 9. On the other hand, Defendant argues that Sun is not entitled to a heightened duty of care because, under the circumstances of this case, Sun was not exposed to a unique maritime peril. Reply at 1–4.

It is well-established that a cruise line operator owes its passengers a duty of reasonable care under the circumstances. *See, e.g.*, *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) ("Concerning the duty element in a maritime context the Supreme Court held in *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959), that 'a shipowner owes the duty of exercising *reasonable care* towards those lawfully aboard the vessel who are

6

not members of the crew.'") (emphasis in original); *Brown v. Carnival Corp.*, 202 F. Supp. 3d 1332, 1338 (S.D. Fla. 2016) (Ungaro, J.) ("Generally, ship owners and operators do not owe a heightened or special duty of care to their passengers."); *Ceithaml v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345, 1350 (S.D. Fla. 2016) (Williams, J.) ("Pursuant to federal maritime law, the duty of care that cruise operators owe passengers is ordinary reasonable care under the circumstances, 'which requires, as a prerequisite to imposing liability, that the carrier have actual or constructive notice of the risk-creating condition.'") (quoting *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989)).

Sun relies on the following language from *Keefe* to support his argument that ceiling tiles and anchoring devices that become loose owing to vessel movement and vibration is a unique maritime peril for which Defendant owed him a heightened duty of care:

> [W]e hold that the benchmark against which a shipowner's behavior must be measured is ordinary reasonable care under the circumstances, a standard which requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition, <u>at least where, as here, the menace is one commonly encountered on land and not clearly linked to nautical adventure</u>.

Resp. at 7–9 (quoting *Keefe*, 867 F.2d at 1322) (emphasis in original).

As Defendant points out in its Reply, Sun points to no Eleventh Circuit cases that have applied the heightened duty of care he asks the Court to apply here. The cases that Plaintiff relies on are either from outside the Eleventh Circuit, are no longer valid law, or only actually apply a duty of reasonable care. *See Keefe*, 867 F.2d at 1322 (noting the existence of a heightened care standard but applying ordinary care); *Rainey v. Paquet Cruises, Inc.*, 709 F.2d 169, 172 (2d Cir. 1983) (same); *Moore v. Commodore Cruise Line*, 53 F.3d 1281 (5th Cir. 1995)

(carrier owed "high duty of care" to passenger who tripped over elevated doorsill on cruise ship).

This Court declines Sun's invitation to impose a heightened duty of care under the circumstances of this case. Review of case law from this Circuit reflects that the Eleventh Circuit forecloses the inference that a ship's movement and vibration is a unique maritime hazard, as Plaintiff suggests. *See Kressly v. Oceania Cruises, Inc.*, 718 F. App'x 870, 872–73 (11th Cir. 2017) (declining "to adopt a heightened standard of care for vessels when they transport passengers during tumultuous weather"); *see also Reinhardt v. Royal Caribbean Cruises, Ltd.*, No. 12-cv-22105, 2013 WL 11261341, at *4 (S.D. Fla. Apr. 2, 2013) (Ungaro, J.) ("[T]he maritime nature of ship movement is not so extraordinary as to conclude that [d]efendant owed [p]laintiff anything more than ordinary, reasonable care in this case. While ship movement itself is not a condition experienced by those who spend their daily lives on *terra firma,* the potential danger of falling from an elevated plane is. A danger is not especially maritime in nature if it is akin to those dangers that a passenger meets in her onshore life, and "from which [she] easily and completely habitually protects [herself].") (citing *Rainey*, 709 F.2d at 171). On the other hand, Defendant's argument that ceiling tiles are commonly used on land and can fall for a variety of reasons unrelated to a ship's movement or vibration is well taken.

This Court also notes that the allegations in Counts I, II, and III of the Amended Complaint are inconsistent with Sun's argument in response to the Motion. *See* Am. Compl. ¶ 20 ("Defendant owed Plaintiff a duty of **reasonable** care under the circumstances . . .") (emphasis added); *id.* ¶ 24 (same); *id.* ¶ 28 (same). As the Eleventh Circuit expressly states in *Kressly*, "the federal maritime law in this circuit is clear that the owner of a vessel in navigable

8

waters owes passengers a duty of reasonable care under the circumstances." *Kressly*, 718 F. App'x at 872 (citing *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1279 (11th Cir. 2015)); *see also Amy v. Carnival Corp.*, 961 F.3d 1303, 1308 n.4 (11th Cir. 2020) ("Our prior precedent forecloses [plaintiff]'s argument for a heightened duty of care."); *Carroll v. Carnival Corp.*, 955 F.3d 1260, 1264 (11th Cir. 2020) ("With respect to the duty element, a cruise line . . . owes its passengers 'a "duty of reasonable care" under the circumstances.'" (citation omitted)). Therefore, this Court finds that the applicable duty owed by Defendant to Sun in this case is a duty of reasonable care under the circumstances.

### B.  Direct vs. Vicarious Liability

In his Response, Sun asserts that Counts I and II are pled in the alternative under both direct and vicarious liability theories and contends that the notice requirement does not apply to claims proceeding under a theory of vicarious liability. *See* Resp. at 15. To this, Defendant responds that Count II should be dismissed because it improperly alleges vicarious liability for negligent failure to inspect and maintain when such a claim may only proceed under a direct negligence theory. Reply at 5–8. Defendant also argues that Counts I and II should be dismissed because Sun fails to identify a specific crewmember whose alleged negligence led to Sun's injury. Reply at 8–9.

In *Yusko*, the Eleventh Circuit made it clear that a vicarious liability claim does not require a plaintiff to plausibly plead that a cruise line carrier had notice of a dangerous condition. *See Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, 1167 (11th Cir. 2021) ("[T]he notice requirement does not—and was never meant to—apply to maritime negligence claims proceeding under a theory of vicarious liability."). Still, mindful of the incentive this might

9

give to a plaintiff seeking to avoid pleading notice, the *Yusko* Court was also careful to distinguish claims that are allowed to proceed under a vicarious liability theory from claims that are not:

> It may be true that, in some cases, it will [be] easier for a passenger to proceed under a theory of vicarious liability than under one of direct liability. But common sense suggests that **there will be just as many occasions where passengers are limited to a theory of direct liability. Sometimes, as in *Keefe*, a passenger will not be able to identify any specific employee whose negligence caused her injury. In other cases, a passenger will seek to hold a shipowner liable for maintaining dangerous premises** (as in *Everett*) . . . . Accordingly, we are confident that the notice requirement will have a robust field of operation despite our decision not to extend it to vicarious liability.

*Id.* at 1170 (emphasis added) (citing *Keefe*, 867 F.2d 1318); *Everett v. Carnival Cruise Lines*, 912 F.2d 1355 (11th Cir. 1990)).

To state a claim for vicarious liability in a maritime action against a shipowner, a plaintiff must plausibly allege that an employee committed a negligent act: "(1) within the scope of employment, or (2) during the course of employment and to further a purpose or interest of the employer." *Carey v. Kirk*, No. 21-20408-CIV, 2022 WL 17996027, at *7 (S.D. Fla. Sept. 2, 2022) (Martinez, J.) (citation omitted). As Defendant argues in its Reply, the issue presented here is whether Sun has pled sufficient facts to identifying a specific employee or group of employees who were allegedly responsible for his injury. *See Holland v. Carnival Corp.*, 50 F.4th 1088, 1094 (11th Cir. 2022) (holding that the identification of a specific crewmember is an "essential part of any claim seeking to impose vicarious liability on an employer for an employee's negligence").

In Count I, Sun alleges that "Defendant and/or its agents, servants and/or employees" breached its duty with respect to the design, construction, and approval of the ceiling tiles and

anchoring devices that caused his injury. Am. Compl. ¶ 21. Similarly, in Count II, Sun alleges that "Defendant and/or its agents, servants and/or employees" breached its duty to properly inspect and maintain the ceiling tiles and their anchoring devices. *Id.* ¶ 24. These allegations are insufficient to establish vicarious liability because Sun must identify a specific employee. *See Yusko*, 4 F.4th at 1170. In other examples where courts in this District found plaintiffs had successfully pled a vicarious liability claim, those plaintiffs identified a single responsible employee, even if not by name. *See Hunter v. Carnival Corp.*, 609 F. Supp. 3d 1305, 1309–12 (S.D. Fla. 2022) (Altonaga, J.) (claim based on specific cabin steward's failure to secure bunk bed ladder); *Swain v. Carnival Corp.*, No. 23-22973-Civ, 2024 WL 552196, at *3 (S.D. Fla. Feb. 12, 2024) (Scola, J.) (allegation that "one Carnival security guard in particular was nearby, throughout the entirety of the encounter and failed to intervene in the attack"). This is consistent with *Yusko* itself, wherein a single allegedly negligent dancer was pled to have caused the plaintiff's injuries.

Here, however, Sun's claim "involve[s] the conduct of multiple individual agents of the principal, not identifiable to the plaintiff at the outset of the case[,]" and therefore is exactly the sort of claim that must be brought under a theory of direct liability. *Mathis v. Classica Cruise Operator Ltd. Inc.*, No. 23-CV-81479, 2024 WL 1430508, at *5 (S.D. Fla. Apr. 1, 2024) (McCabe, Mag. J.), *report and recommendation adopted*, 2024 WL 3616006 (S.D. Fla. Aug. 1, 2024) (Cannon, J.). Courts in this District have consistently interpreted *Yusko* as "recognizing that a plaintiff will not always be able to plead a vicarious liability claim plausibly and in good faith." *Branyon v. Carnival Corp.*, No. 24-cv-20576, 2024 WL 3103313, at *4–5 (S.D. Fla. June 24, 2024) (Altman, J.) (denying motion to dismiss and allowing

11

plaintiff to proceed with her theory that Carnival is "vicariously liable for the negligent acts and omissions of an *identified* crewmember employee, a photographer's assistant whose negligence contributed to [plaintiff]'s trip and fall") (emphasis added) (quoting *Hunter v. Carnival Corp.*, 609 F. Supp. 3d 1305, 1310 (S.D. Fla. 2022) (Altonaga, J.)).

This Court finds that Sun has not plausibly pled a vicarious liability claim by broadly alluding to Defendants' "agents, servants and/or employees" who were possibly in the subject area where Sun alleges he was injured. Therefore, Counts I and II are due to be dismissed to the extent Sun alleges a vicarious liability claim.

Further, with respect to Count II, Defendant is correct that "negligent maintenance and failure to warn claims are limited to a theory of direct liability." *Worley v. Carnival Corp.*, No. 21-23501-Civ, 2022 WL 845467, at *2 (S.D. Fla. Mar. 22, 2022) (Moreno, J.) (citation and quotation marks omitted). Following *Yusko*, several courts in this District have rejected attempts by plaintiffs to allege negligent maintenance and negligent failure to warn as vicarious liability claims. *See, e.g.*, *Britt v. Carnival Corp.*, 580 F. Supp. 3d 1211, 1215 (S.D. Fla. 2021) (Moore, J.) ("[T]he Court does not read *Yusko* so broadly as to permit negligent maintenance and failure to warn claims brought under a vicarious liability theory."); *Worley*, 2022 WL 845467, at *7 (finding that failure to maintain and failure to warn claims, regardless of how plead, are direct liability claims and thus require notice); *Megill v. Royal Caribbean Cruises, Ltd.*, No. 24-22534-CIV, 2024 WL 6823031, at *4 (S.D. Fla. Sept. 13, 2024) (Altonaga, C.J.) (dismissing claim for negligent maintenance and failure to warn alleged under both vicarious and direct liability theories). This Court agrees.

12

Accordingly, consistent with other courts in this District, this Court finds that Sun's claims for negligent maintenance (Count II) and negligent failure to warn (Count III) may only be alleged as direct liability claims and must allege facts demonstrating that Defendant was on notice of the alleged dangerous condition.

### C. Whether Plaintiff Has Alleged That Defendant Had Actual Or Constructive Notice Of The Dangerous Condition.

Having determined that Sun's claims are direct liability claims and therefore require notice, the second issue is whether Sun has adequately pled that Defendant was on notice of the alleged dangerous condition. Defendant argues that Counts I, II, and III should be dismissed because the Amended Complaint does not include any plausible facts indicating that Defendant had actual or constructive notice of the dangerous condition. *See* Mot. at 3–4, 7–11. In his Response to the Motion, Sun fails to address Defendant's argument, presumably because Sun contends that he is excused from the obligation of establishing notice for the reasons that this Court rejected above. Nonetheless, this Court addresses whether the Amended Complaint includes sufficient allegations of actual or constructive notice.

Actual notice exists when the defendant knows about the dangerous condition. *See Keefe*, 867 F.2d at 1322; *Guevara*, 920 F.3d at 720. In the Amended Complaint, Sun does not allege that Defendant had actual notice of the dangerous condition.

Turning to constructive notice, Defendant argues that Sun's allegations as to whether the dangerous condition existed for a sufficient period of time are insufficient and that allegations based on similar prior incidents are also insufficient to establish constructive notice. Mot. at 7–11. Again, Sun does not respond to these arguments.

13

In the Motion, Defendant argues the Amended Complaint does not include sufficient facts to establish when the dangerous condition came into existence and for how long it was present. In the Amended Complaint, Sun alleges that "Defendant knew or should have known of the unreasonable risk of harm to passengers from ceiling tiles falling in the subject area by regular inspection and maintenance of the ceiling tiles and their anchoring devices aboard the [Vessel]." Am. Compl. ¶ 16. These threadbare allegations regarding Defendant's alleged constructive notice of the dangerous condition are insufficient to survive a motion to dismiss. When a plaintiff makes conclusory legal allegations but fails to "include factual allegations that plausibly suggest [a defendant] had constructive notice of the dangerous condition," the plaintiff "has failed to satisfy the pleading standard set forth in *Iqbal* and *Twombly*." *Holland*, 50 F. 4th at 1095; *see also Newbauer v. Carnival Corp.*, 26 F.4th 931, 936 (11th Cir. 2022) (affirming dismissal of complaint because it did not allege any facts supporting the conclusions that the allegedly dangerous condition had existed for a sufficient period of time to create constructive notice, that this was a recurring issue, or that there may have been employees in the area who observed the hazard and failed to take corrective action).

As noted above, a plaintiff can "establish constructive notice with evidence of substantially similar incidents in which 'conditions substantially similar to the occurrence in question must have caused the prior accident.'" *Guevara*, 920 F.3d at 720 (cleaned up). Regarding constructive notice based on prior incidents, Sun alleges in the Amended Complaint as follows:

> Defendant knew or should have known of the unreasonable risk of harm to passenger[s] from ceiling tiles falling in the subject area through prior similar incidents or near misses that occurred from the same or substantially similar ceiling tiles becoming loose and unstable and/or collapsing aboard the [Vessel],

14

its sister ships SCARLET LADY and RESILIENT LADY, and other vessels with the same or substantially similar ceiling tiles. Upon information and belief, Defendant received prior complaints or concerns from passengers, employees, or vendors regarding the ceiling tiles becoming loose, unstable, or collapsing aboard vessels in the fleet. Further, substantially similar ceiling tiles aboard similar cruise ships have collapsed on passengers and such incidents were known throughout the cruise industry and should have been known to Defendant directly, or by virtue of common attorneys, insurers and/or other agents through whom such knowledge may be imputed. For example, on January 27, 2018, aboard Royal Caribbean's ANTHEM OF THE SEAS, a substantially similar ceiling tile collapsed and struck a passenger in a night club. *See Hara v. Royal Caribbean Cruises, Ltd.*, Case No. 18-25389-Civ-Scola. By way of further example, Defendant's counsel in this lawsuit defended the operator of the cruise ship CELEBRATION BAHAMAS when a metal ceiling tile collapsed and struck a passenger in the head while dining in one of the ship's restaurants on March 24, 2013. *See Millan v. Celebration Cruise Operator, Inc.*, Case No. 14-CV-21005 WILLIAMS.

Am. Compl. ¶ 17.

Defendant argues that Sun fails to allege any identifying information regarding the alleged prior incidents to show that they are substantially similar to the circumstances in the instant case. Mot. at 9. The undersigned agrees. Merely alleging that, upon information and belief, there were prior incidents or complaints, without more, is insufficient to establish constructive notice of the alleged dangerous ceiling tiles and their anchoring devices. *See Serra-Cruz v. Carnival Corp.*, No. 18-cv-23033, 2019 WL 13190647, *8 (S.D. Fla. Feb. 11, 2019) (Ungaro, J.) (noting that prior accidents did not put shipowner on notice because "there is no explanation as to *how* these incidents put Carnival on notice"); *Polanco v. Carnival Corp.*, No. 10-cv-21716, 2010 WL 11575228, at *3 (S.D. Fla. Aug. 10, 2010) (Jordan, J.) (holding that plaintiff failed to allege notice based on prior incidents because there were "no details about the similar past incidents that Carnival allegedly failed to investigate"). The Amended Complaint is altogether devoid of allegations regarding *how* the alleged prior incidents relate

15

to what happened in this case and *how* those incidents put Defendant on notice of the risk-creating condition. Accordingly, because they lack sufficient allegations regarding how or why Defendant should have had notice of the alleged dangerous condition, Counts I, II, and III are dismissed.

### D.  *Negligent Design And Construction (Count I)*

Although this Court has already determined that Count I is due to be dismissed, the undersigned also addresses Defendant's argument that Sun's claim for negligent design and construction should be dismissed because the allegations are conclusory. Mot. at 3–6. Sun responds that the allegations are sufficient to state a negligent design and construction claim.

To state a claim for negligent design under maritime law, a plaintiff must allege, among other elements, that the defendant "actually created, participated in, or approved the alleged negligent design" of the risk-creating condition. *Groves v. Royal Caribbean Cruises, Ltd.*, 463 F. App'x 837, 837 (11th Cir. 2012); *Johnson v. Carnival Corp.*, No. 19-cv-23167, 2021 WL 1341526, at *9 (S.D. Fla. Apr. 9, 2021) (Bloom, J.). At the motion to dismiss stage, allegations that the cruise line participated in the construction or design of the allegedly dangerous condition, or at least approved of the condition, are generally sufficient to satisfy this element. *See Canyes v. Carnival Corp.*, No. 22-cv-20858, 2022 WL 4270001, at *3–4 (S.D. Fla. Sept. 15, 2022) (Bloom, J.); *Donaldson v. Carnival Corp.*, No. 20-23258-Civ, 2020 WL 6801883, at *4 (S.D. Fla. Nov. 19, 2020) (Scola, J.); *Castillo v. NCL Bahamas Ltd.*, No. 17-CV-23545, 2018 WL 1796260, at *4 (S.D. Fla. Jan. 5, 2018) (Garber, M.J.), *report and recommendation adopted*, 2018 WL 1795442 (S.D. Fla. Feb. 23, 2018) (Scola, J.).

In the Amended Complaint, Sun alleges that Defendant "designed, owned, operated, managed, maintained, and/or had exclusive control" of the Vessel. Am. Compl. ¶ 8. Sun further alleges that Defendant participated in the design and construction of the Vessel and its sister ships, or alternatively, accepted the ceiling tiles and anchoring devices with their design defects after an opportunity to inspect them. *Id.* ¶ 15. At the motion to dismiss stage, where the Court accepts the facts as alleged by Plaintiff, these allegations are sufficient. *See Canyes*, 2022 WL 4270001, at *3–4. Nevertheless, as discussed above, because the Amended Complaint fails to allege actual or constructive notice, Count I is dismissed.

### E. Res Ipsa Loquitor (Count IV)

In Count IV, Sun asserts a claim for negligence based on the doctrine of *res ipsa loquitur.* Am. Compl. ¶¶ 33–36. Defendant argues that Count IV should be dismissed because *res ipsa loquitor* is not a legally cognizable cause of action. Defendant is correct. As the Eleventh Circuit has noted, "[w]ithout delving too much into Florida law, . . . *res ipsa loquitor* is not a cause of action but instead a way to prove negligence." *Mucciolo v. Boca Raton Reg'l Hosp., Inc.*, 824 F. App'x 639, 644 n.2 (11th Cir. 2020) (citing *MacClatchey v. HCA Health Servs. of Fla., Inc.*, 139 So. 3d 970, 972 (Fla. 4th DCA 2014)); *Sutton v. Royal Caribbean Cruises Ltd.*, 774 F. App'x 508, 512–13 (11th Cir. 2019) ("*Res ipsa loquitur* is an evidentiary doctrine that permits an inference of negligence when the facts warrant, but do not compel, that inference."); *see also Gandhi v. Carnival Corp.*, No. 13-24509-CIV, 2014 WL 1028940, at *2 (S.D. Fla. Mar. 14, 2014) (Moreno, J.) ("*Res ipsa loquitur* is thus not a separate cause of action; rather, it is an evidentiary doctrine that permits the trier of fact to infer negligence from circumstantial evidence."); *Lobegeiger v. Celebrity Cruises, Inc.*, No. 11-21620-CIV, 2011 WL 3703329, at *7–8

(S.D. Fla. Aug. 23, 2011) (Altonaga, J.) ("*[R]es ipsa loquitur* is not a separate cause of action but an evidentiary doctrine that permits the trier of fact to infer *negligence* from circumstantial evidence. The appropriate time for the Court to determine whether to instruct the jury on the doctrine of *res ipsa loquitur* is not on a Rule 12(b)(6) motion for failure to state a claim."). Accordingly, Count IV is dismissed, and this Court will address prior to trial, if appropriate, whether a *res ipsa loquitur* instruction is appropriate in this case.

### F.  Leave To Amend

In his Response, Sun requests leave to amend the Amended Complaint as an alternative to possible dismissal. Resp. at 18. However, inclusion of this request for affirmative relief in the response rather than filing a motion is improper. *See* Fed. R. Civ. P. Rule 7(b)(1); *see also Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly.") (quoting *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1222 (11th Cir. 1999)).

Nonetheless, this Court finds that it is possible that a more carefully drafted pleading including additional factual support may satisfy the pleading requirements as to some of the causes of action discussed above. "Generally, where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (cleaned up). However, leave to amend is not available nor warranted where amendment would be futile. *See Spaulding v. Poitier*, 548 F. App'x 587, 594 (11th Cir. 2013) (holding that there was no abuse of discretion in denying plaintiff leave to amend his

complaint because such an amendment would have been futile (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007))); *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004) (observing that courts "properly deny leave to amend the complaint under [Federal Rule of Civil Procedure] 15(a) when such amendment would be futile . . . [such as] 'when the complaint as amended is still subject to dismissal.'" (first citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); and then quoting *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999))). Mindful that courts "should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), this Court concludes that Sun should be permitted an opportunity to file a second amended complaint to correct the deficiencies discussed herein.

## IV.   CONCLUSION

Accordingly, for the reasons set forth above, it is

**ORDERED AND ADJUDGED** as follows:

1. The Motion to Dismiss [**ECF No. 21**] is **GRANTED**.

2. Counts I, II, and III of the Amended Complaint are **DISMISSED WITHOUT PREJUDICE**.

3. Count IV of the Amended Complaint is **DISMISSED WITH PREJUDICE**. Plaintiff is not precluded from requesting a *res ipsa loquitur* instruction, if appropriate.

If Plaintiff intends to file a second amended complaint, he shall do so within **fourteen (14) days** of the date of this Order and is admonished that any amended complaint must address the deficiencies identified in this Order. If Plaintiff files a second amended complaint,

19

Defendant shall file a response within fourteen (14) days of the filing of the amended pleading.

If Plaintiff fails to file an amended pleading within this time, the Court will dismiss this action.

**DONE AND ORDERED** in Chambers in the Southern District of Florida, this 27th

day of March, 2026.

**MELISSA DAMIAN**
**UNITED STATES DISTRICT JUDGE**

cc:    Counsel of record